UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALLIANZ GLOBAL RISKS US INSURANCE )
COMPANY, as Subrogee of Viasys )
Healthcare, and VIASYS )
HEALTHCARE, INC., )
    )
    Plaintiffs, )
    )
v. )
    ) CIVIL ACTION NO.
J.A. MIARA TRANSPORTATION, INC., and ) 08-11901-DPW
SECOND STREET IRON METAL, )
    )
    Defendants. )
    )
v. )
    )
JACOB MITCHELL, )
    )
    Third-Party Defendant. )

MEMORANDUM AND ORDER
November 4, 2010

Plaintiffs Allianz Global Risks U.S. Insurance Company

("Allianz") and its insured, Viasys Healthcare, Inc. ("Viasys"),

filed this complaint seeking to recover for the damages they

incurred as a result of the loss of titanium pallets stored at a

facility owned by defendant J.A. Miara ("Miara").  Plaintiffs and

Miara have moved for summary judgment with respect to some of the

claims brought against Miara.  For the reasons discussed below, I

will deny both motions.

**I.   BACKGROUND**

**A.    *The Facts***

Miara began to perform trucking services for Viasys in 1993.

On separate occasions, Miara issued Viasys a bill of lading limiting its liability for shipments to the amount of $5,000.00 per ton for lost or damaged materials in the event that no higher value was declared.

In the spring of 2005, Joseph Hoffee of Viasys contacted Joseph Miara, President of Miara, about the possibility of storing pallets of titanium at Miara's facility.  At that time, Hoffee inquired about the security system in place in the facility.  In response, Joseph Miara offered Hoffee the opportunity to "come take a look" to make sure that he was satisfied with the level of security in place at the time.

While it was not customary for Miara to perform this type of bailment service, Miara agreed to store, on behalf of Viasys, fifteen pallets of titanium and deliver the pallets upon request to locations to be specified by Viasys.[1]  When asked by Miara, Hoffee declined to declare a higher value or purchase additional insurance for the stored property.

Miara received fifteen pallets of titanium from Viasys for storage at its facility on June 5, 2005.  Shortly thereafter, Gary Gallup and Joseph Hoffee of Viasys went to Miara's facility to inspect the delivered titanium.  In order to facilitate the inspection, Viasys' employees had to remove the cardboard placed

---

[1]  The summary judgment record does not contain any written agreement regarding the performance of the storage services by Miara.

2

around the pallets.  At that time, Joseph Miara believed that
Hoffee had "agreed" to the location of the pallets.

On June 20, 2005, before any delivery of the stored material
was made, Viasys, a Delaware corporation, inexplicably filed a
Foreign Certificate of Withdrawal with the Massachusetts
Secretary of State indicating that it no longer transacted
business in the Commonwealth of Massachusetts.  Miara thereafter
made three successive deliveries of titanium pallets to Viasys'
facilities in Massachusetts.  The first involved five pallets
delivered to a Viasys' facility in Woburn, Massachusetts pursuant
to a request made by Viasys on July 13, 2005.  After Miara
complied with Viasys' request, ten pallets of titanium remained
at Miara's warehouse.  The amount of titanium left at the
facility was reflected on the invoices submitted by Miara.[2]

After the first delivery, Gallup along with Chris Bertowski
of Viasys visited the Miara facility to collect titanium samples.
Gallup admitted that they "had to rummage around through the
boxes in order to get the sample[s]."  When visiting the
facility, Gallup and Bertowski had to check in at the front
office prior to entering the facility and were escorted by
Miara's employees to access the stored materials.

---

[2]  The only invoices contained in the record concern the
delivery of the titanium pallets.  The record does not contain
any invoice related to the storage of this material.  It appears
that several storage-related invoices were, however, presented to
Joseph Miara during his deposition.

Viasys requested on October 14, 2005 that Miara deliver five additional pallets of titanium.  Miara complied with Viasys' request by delivering two pallets to Viasys' Woburn facility and three others to Viasys' New Boston street facility.  After this delivery, five pallets of titanium should have remained at Miara's warehouse; this amount was reflected on the invoices submitted by Miara.

In late January 2006, Viasys requested the delivery of the last five pallets.  Upon delivery, Viasys discovered that only one pallet had been shipped.  When Gallup contacted Miara to inquire about the missing four pallets, an employee of Miara, believed to be Joseph Miara, responded that Miara did not have those pallets in its possession.

Thereafter, Viasys submitted a claim to Allianz, its insurer, to obtain reimbursement for the loss of the four pallets of titanium claiming a loss of $527,572.00.

**B.    *The Procedural History***

On November 14, 2008, Allianz, as subrogee of Viasys, filed a complaint against Miara asserting claims for negligence (Count I), breach of bailment (Count II), and conversion (Count III).  Shortly thereafter on November 25, Allianz and Viasys jointly filed a First Amended Complaint adding Second Street Iron & Metal ("Second Street"), an entity alleged to have bought the lost titanium, as a co-defendant and asserting claims for negligence

4

(Count IV), conversion (Count V) and replevin (Count VI) against
Second Street.

Miara filed its Answer on February 20, 2009 and added a
cross-claim for indemnification and contribution against Second
Street.  For its part, Second Street filed its Answer and cross-
claimed against Miara for indemnification and contribution.  On
February 26, Plaintiffs Allianz and Viasys filed a Third-Party
Complaint asserting claims for conversion and contribution
against Jacob Mitchell, a former employee of Miara alleged to
have stolen and resold the titanium to Second Street.

Viasys filed a motion for summary judgment on the breach of
bailment claim[3] brought against Miara on June 1, 2010. (Dkt. No.
30.)  In response, Miara filed a cross-motion for summary
judgment based on Viasys' failure to file as required under Mass.
Gen. Laws ch. 156D, §§ 15.01 *et seq.* and for partial summary
judgment on a limitation of liability theory.  (Dkt. No. 40.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."

---

[3]   Though Viasys filed a motion for summary judgment, rather
than for partial summary judgment, Viasys only addresses in its
supporting memorandum the breach of bailment claim brought
against Miara, leaving the remaining claims - i.e., negligence
and conversion - unaddressed.

FED. R. CIV. P. 56(c).  "A material fact is one that would affect the outcome of the suit, while a genuine issue is one for which the evidence would permit a reasonable jury to return a verdict for the nonmoving party."  *Zimmerman v. Puccio*, 613 F.3d 60, 70 (1st Cir. 2010).

In ruling on a motion for summary judgment, a district court must "view the record in the light most favorable to the non-moving party and resolve all reasonable inferences in its favor, without weighing the evidence or evaluating the credibility of the witnesses."  *Sheehan v. N. Am. Mktg. Corp.*, 610 F.3d 144, 149 (1st Cir. 2010).  Nonetheless, "the non-moving party must put forth specific facts to support the conclusion that a triable issue subsists" in order to overcome a motion for summary judgment.  *Martínez-Rodríguez v. Guevara*, 597 F.3d 414, 419 (1st Cir. 2010).

### III.   DISCUSSION

Three separate issues are put in contention by the parties in their cross motions for summary judgment: (A) standing, (B) breach of bailment, and (C) limitation of liability.

### A.   *Standing*

As a threshold matter, Miara argues that Allianz and Viasys cannot maintain the present action because Viasys is no longer registered as a foreign corporation transacting business in Massachusetts as required under MASS. GEN. LAWS ch. 156D, §§ 15.01 *et seq*. (2004).

6

Section 15.01 requires that all foreign corporations transacting business in Massachusetts deliver a certificate to the Secretary of State for filing. MASS. GEN. LAWS ch. 156D, § 15.01(a). Viasys is a Delaware corporation which purported to withdraw from transacting business in the Commonwealth of Massachusetts on June 20, 2005, over three years before filing the present action. Viasys, however, apparently has continued to conduct business in Massachusetts since that date.[4]

Section 15.02 provides that a foreign corporation transacting business in the Commonwealth without having delivered the requisite certificate "shall not maintain a proceeding in *any court in the commonwealth* until the certificate is delivered and filed." *Id.* § 15.02(a) (emphasis added). There is no reason to read the terms "any court in the commonwealth" to refer to federal courts as well as Massachusetts state courts. The relevant federal statute, 28 U.S.C § 1332, permits diversity actions, such as this one, without reference to any state business certification requirement. To read a Massachusetts court gate keeping statute to bar a Congressional jurisdictional grant to federal courts would undermine § 1332. I decline to read § 15.02 to conflict with federal law.

---

[4] Viasys owns at least two facilities in Massachusetts, one in Woburn and the other on New Boston street.

Accordingly, I reject Miara's argument that summary judgment should be granted on this ground.

**B.    *Breach of Bailment***

Plaintiffs allege that Miara committed a breach of a bailment[5] by failing to return the four pallets of titanium.

### 1.    *Prima Facie* Breach of Bailment

To make out a *prima facie* breach of bailment case, the bailor must show "delivery of the property to the bailee in good condition and the failure to redeliver upon timely demand." *Knowles v. Gilchrist Co.*, 289 N.E.2d 879, 885 (Mass. 1972); *Orient Overseas Container Line v. John T. Clark & Sons of Boston, Inc.*, 229 F. Supp. 2d 4, 15 (D. Mass. 2002) (citing *Knowles*). Once the bailor has made such a showing, "the burden of proof is irrevocably fixed upon the bailee to prove by a fair preponderance of the evidence that he has exercised due care to prevent the property's loss or destruction." *Knowles*, 289 N.E.2d at 885.  This presumption of negligence does not apply unless

---

[5]    The parties do not dispute that the agreement whereby Miara agreed to store, on behalf of Viasys, pallets of titanium and deliver them, upon request**,** qualifies as a bailment.  Under Massachusetts law, "[a] bailment is established by delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be." *King v. Trustees of Boston Univ.*, 647 N.E.2d 1196, 1201 (Mass. 1995) (internal quotations marks and citation omitted).

"the bailee has exclusive control over the property at the time it was destroyed or damaged." *Id.*

The evidence of record suggests that the four missing pallets of titanium were originally delivered to Miara in good condition and that Miara failed to redeliver them upon Viasys' request. Whether the *Knowles* presumption applies in the present case therefore depends on whether Miara had "exclusive control" over the missing property. To defeat this presumption, Miara argues that Viasys had full access to the stored property at the Miara facility on two instances.

Case law on the issue of exclusive control by the bailee is sparse in Massachusetts. This issue is, however, commonly discussed in the context of admiralty cases. *See, e.g.*, *N. Ins. Co. of N.Y. v. Point Judith Marina, LLC*, 579 F.3d 61, 69-70 (1st Cir. 2009); *Goudy & Stevens, Inc. v. Cable Marine, Inc.*, 924 F.2d 16, 19 (1st Cir. 1991); *In re Complaint of Martin*, 596 F. Supp. 2d 142, 162 (D. Mass. 2009). In that context, the First Circuit has held that the requirement that the bailee's possession over the bailed property be exclusive "does not mean that any act of dominion by the bailor over the [property] would also negate the inference." *Judith Marina*, 579 F.3d at 70 (quoting *Goudy*, 924 F.2d at 19). Rather, the "exclusive control" presumption requires only that control or possession "be of such a nature as to permit a reasonable trier of fact to infer that the bailee is

9

in the better, or sole, position to explain what actually happened." *Id.* Massachusetts case law, however, has held that the presumption of negligence does *not* apply when the parties had "equal unrestricted access" to the lost property. *Royal Ins. Co. v. Marina Indus., Inc.*, 611 N.E.2d 716, 718 (Mass. App. Ct. 1993) ("Since both parties had equal unrestricted access to the vessel, there was no basis for applying the presumption or other inference of negligence.").

The record is clear that the parties did not have "equal unrestricted access" to the lost pallets of titanium.  There is no evidence that would suggest Viasys had unrestricted access to the property at any material time.  To the contrary, Gallup admitted that, during his second visit, he and Bertowski had to check in at the front office prior to entering the facility and were escorted by Miara's employees to access the stored materials.  The mere fact that employees of Viasys visited the facility on two occasions after titanium was delivered is insufficient to establish that the parties had "equal unrestricted access" to the property.  *Cf. Goudy*, 924 F.2d at 19 n.3 (citing cases holding that a bailor's "mere access" to the property is insufficient to defeat the presumption).

Accordingly, I conclude that the presumption of negligence applies in this case and that, as a result, Miara must prove by a preponderance of the evidence that it exercised due care to prevent Viasys' property loss. *Knowles*, 289 N.E.2d at 885.  As

10

will appear below, this remains a disputed issue of fact and
consequently summary judgment is not available.

    2.    Exercise of Due Care by Miara

    The question of due care by Miara raises two issues in the
summary judgment context: (a) whether Miara was required to file
expert testimony regarding the standard of care applicable to a
warehouseman/bailee, and (b) whether Miara has adduced sufficient
evidence to show that it exercised due care in preventing the
loss of Viasys' property.

    a.    *Expert Testimony Required?*

    Plaintiffs argue that, in light of the complexity of the
issues involved, Miara was required to submit expert testimony
concerning the standard of care applicable to a warehouseman/
bailee.  They contend that, because Miara failed to do so, Miara
cannot overcome its burden of proof to show that it exercised due
care to prevent the loss of Viasys' property.

    Generally, expert testimony is required to establish the
appropriate standard of care where issues of fact are so complex
that they are beyond the ordinary understanding of the jury.
*See, e.g.*, *Pongonis v. Saab*, 486 N.E.2d 28, 29 (Mass. 1985)
(rescript) (requiring expert testimony "to establish that the
attorney failed to meet the standard of care owed by an attorney
in a particular case"); *Korper v. Weinstein*, 783 N.E.2d 877, 880
(Mass. App. Ct. 2003) (requiring expert testimony "in medical

11

malpractice cases to inform the question whether the professional services rendered by the physician deviated from the standard of care owed by the physician to the patient"); *Ward v. Levy*, 534 N.E.2d 308, 309 (Mass. App. Ct. 1989) (rescript) (requiring expert testimony "on the appropriate dental practice in treating the plaintiff in the condition which he presented on the date of the injury."); *Atlas Tack Corp. v. Donabed*, 712 N.E.2d 617, 621 n.4 (Mass. App. Ct. 1999) (requiring expert testimony in case involving engineering with "complicated questions of technology").  By contrast, expert testimony is not required when the jury can determine "on the basis of their own lay knowledge" the applicable standard of care and the defendant's failure to meet that standard.  *doCanto v. Ametek, Inc.*, 328 N.E.2d 873, 877 (Mass. 1975); *see also Pongonis*, 486 N.E.2d at 29 ("expert testimony is not essential where the claimed legal malpractice is so gross or obvious that laymen can rely on their common knowledge to recognize or infer negligence.").

The case before me involves no level of complexity sufficient to require that expert testimony be submitted by Miara.  The only factor the jury would need to consider to determine whether Miara deviated from the standard of care applicable to a warehouseman/bailee is the amount of security present at Miara's facility.  No complex issues of engineering or technology would be involved however.  *Cf. Esturban v. Mass. Bay*

12

*Transp. Auth.*, 865 N.E.2d 834, 835 (Mass. App. Ct. 2007) (rescript) (holding that the lack of expert testimony to prove negligent design and operation of escalators was fatal to plaintiff's claims because it would require the jury "to resort to impermissible conjecture and surmise regarding the applicable standard of care and the cause of injuries stemming from the accident") (internal quotation marks and citation omitted).  In this context, a jury could reasonably determine, on the basis of their common knowledge, the applicable standard of care for a warehouseman/bailee without having to resort to expert testimony.[6]

    b.   *Sufficiency of the Evidence Presented by Miara*

While Miara is not required to submit expert testimony, Miara must nevertheless prove that it has exercised due care to

---

[6]  In support of their own motion of summary judgment, Plaintiffs submitted the testimony of Fred Kimball, a warehouse consultant.  In his affidavit, Kimball asserts that Miara qualifies as a Third-Party Logistics Provider ("3PLs").  Such 3PLs are defined, according to Kimball, as entities providing space and other logistics services as well as, in some instances, transportation and trucking services.  Kimball also gives examples of what, in his opinion, constitutes the "Entry-Level Best Practices" and the "Best Practices for High Value Product" applicable to 3PLs.  While Kimball's testimony may provide the jury with some guidance regarding the appropriate standard of care applicable to a warehouseman/bailee, his testimony is not dispositive on this issue.  Rather, the jury will be free either to credit or to disregard Kimball's testimony.  *See Leibovich v. Antonellis*, 574 N.E.2d 978, 982 (Mass. 1991) ("The jury is entitled to discount, or disbelieve, the expert's testimony.").

prevent Viasys' property loss in order to defeat summary judgment. *Knowles*, 289 N.E.2d at 885.

Miara has offered evidence that its facility had a security system in place at the time the loss occurred.  This system included, according to Miara, door locks, motion sensors, as well as fire and smoke detectors, where the door and motion sensors were activated during closed hours only.  Miara has also offered evidence that the security system was connected to an off-site security office and that access to alarm codes was limited to certain employees.  There is further evidence in the record that Miara exercised at least some control over the access of its facility.  As an illustration, while Joseph Miara admitted that non-employees were sometimes allowed access to the facility without any escort from, or knowledge by, Miara's employees, Gallup testified that, on his second visit at the facility, he and Bertowski had to check in at the front office prior to entering the facility and were escorted by Miara's employees to access the stored property. Finally, Miara has suggested that Viasys contributed to the loss of the stored titanium when Gary Gallop removed the cardboard placed around the pallets in order to retrieve samples, thereby exposing the pallets to view.

For its part, Kimball's testimony provides that the 3PLs' so-called "best practices" require additional security measures, which apparently were not in place at Miara's facility at the

14

time the loss occurred.  Such measures include, among others, daily cycle counting of at least a portion of the stored products, placement of the products in wire mesh security cages, documentation identifying withdrawal of any stored product, and mandatory background check and drug testing as a condition of employment.  As previously discussed in Note 6 *supra*, the testimony provided by Kimball is not dispositive on the appropriate standard of care of a warehouseman/bailee.  Thus, the failure by Miara to have adopted all the security measures identified by Kimball is insufficient to enter judgment in favor of Plaintiffs as a matter of law.  Rather, I find that the record before me presents a question of fact regarding the issue whether Miara exercised due care with respect to Viasys' property and whether Viasys contributed to the loss of its property.  *See Nissho Iwai Am. Corp. v. New England Warehousing & Distrib., Inc.*, 650 F. Supp. 147, 148 (D. Mass. 1986) ("the defendant's offer of proof of due care . . is sufficient to raise a question of fact for the jury."); *Rabinovitzch v. Sea Crest Cadillac-Pontiac, Inc.*, 335 N.E.2d 698, 699 (Mass. 1975) (rescript) (holding that the degree of care was "a question of fact.").  Consequently, I deny summary judgment on this ground.

## C.   *Limitation of Liability*

Miara contends that a limitation of liability in the amount of $5,000.00 per ton applies based on the long standing

15

relationship the parties had for the shipment of goods.  As a basis for this contention, Miara alleges that, for each shipment made, including those of the titanium pallets, a bill of lading was issued to Viasys.  The bill contains a liability-limiting section "Limitation of Liability of Carrier," which provides as follows:

> On shipments of new property, Carrier's liability for any loss or damage related to the shipment covered by this Bill of Lading is limited to $5,000 per ton or the actual damage, whichever is less, unless a higher value has been declared on the front of this Bill of Lading and an additional charge for said higher value is paid. The declared value is not insurance and Carrier does not provide or sell cargo liability insurance.

In addition to the bill of lading, the five thousand dollar per ton limitation appears on Miara's Common Carrier Tariff, which applies to the transportation of general commodities within the Commonwealth of Massachusetts.  The tariff states that, when no reference is made as to the value of the goods tendered, "THE CARRIER'S RELEASED VALUATION LIMIT FOR EACH SHIPMENT TENDERED WILL BE FIVE THOUSAND DOLLARS ($5,000.00) FOR EACH TON (2,000 POUNDS)."

Under Massachusetts law, "[a] course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." MASS. GEN. LAWS ch. 106, § 1-205(1) (1999). "A prior course of dealing is 'admissible to show the practice of

16

the parties of limiting liability' for the shipment of goods."
*Rational Software Corp. v. Sterling Corp.,* 393 F.3d 276, 279 (1st
Cir. 2005) (quoting 7A RONALD A. ANDERSON, UNIFORM COMMERCIAL CODE, §
7-309:10 (3d ed. 2001)).  Massachusetts law has relied on the
prior course of dealing of parties in other contexts, such a
bailment.  *See Falvey Cargo Underwriting, Ltd. v. Metro Freezer &
Storage, LLC*, No. 0004428, 2002 WL 31677198, *2-3 (Mass. Super.
Ct. Nov. 1, 2002) (considering the parties' course of dealing to
conclude that a warehouseman established that the bailor had
agreed to accept a limitation on the warehouseman's liability for
damaged goods), *aff'd*, 810 N.E.2d 1290 (Mass. App. Ct. 2004)
(unpublished disposition).

The evidence of record before me does not contain any
explicit limitation of liability regarding the *storage* of the
goods.  The only documents relied upon by Miara concern the
*shipment* of titanium pallets.  The loss at issue in this case
arose out of the *storage* of the pallets of titanium.  While
storing goods is not in the ordinary course of Miara's business,
Miara was nonetheless required to issue a warehouse receipt[7] to
Viasys in order to limit its liability to a certain amount.[8]  Any

------

[7]  A warehouse receipt is "a receipt issued by a person
engaged in the business of storing goods for hire."  MASS. GEN.
LAWS ch. 106 § 1-201(45) (2001).

[8]  I note that the invoices issued by Miara regarding the
storage of Viasys' property are not contained in the record.  *See*
Note 2 *supra*.  Viewing the record in the light most favorable to

limitation of liability must be premised on the issuance of a warehouse receipt to the bailor.  *Cf. Cataldo v. Casey & Hayes, Inc. (In re Kownare, Inc.)*, 57 B.R. 163, 166 (Bankr. D. Mass. 1986) ("since no warehouse receipt was issued by [the warehouseman], its lien is invalid").

In this regard, Miara's reliance on *Rational Software Corp. v. Sterling* is of no help.  393 F.3d 276.  In *Rational Software*, the issue was whether a carrier's limitation of liability provision, well-known to the shipper by a prior course of dealing, applied when the bill of lading was not given to the shipper until after the damage occurred.  *Id*. at 276-77.  The First Circuit held in *Rational Software* that the limitation of liability was effective based on the prior course of dealing of the parties, i.e., the shipment of goods exclusively.  *Id*. at 279.  Unlike *Rational Software,* the course of dealing relied upon by Miara is based solely on *shipment*, but the loss of the pallets of titanium arose out of the *storage* of Viasys' property.  The shipment does not therefore arise out the same "particular transaction" between the parties.  *See* MASS. GEN. LAWS ch. 106, § 1-205(1) (1999).

Accordingly, I find that Miara cannot reasonably rely on shipment documents to limit its liability regarding the storage

---

Viasys on this point, I will therefore assume for purposes of this memorandum that warehouse invoices, if any, did not contain any limitation of liability.

18

of Viasys' property.  Hence, I conclude that the limitation of liability based upon the prior course of dealing between the parties on shipment is inapplicable.[9]

### IV.  CONCLUSION

For the reasons set forth more fully above, I DENY both Plaintiffs' motion for summary judgment (Dkt. No. 30.) and Miara's motion for summary judgment (Dkt. No. 40.).


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[9]  As an alternative basis to limit its liability, Miara suggests that a consensual agreement regarding the allocation of risk exists between the parties.  In support of this contention, Miara relies on the fact that Joseph Miara had offered to Hoffee to "come take a look" to make sure that he was satisfied with the level of security in place at the time and that, upon delivery, Joseph Miara believed that Hoffee had "agreed" to the location of the materials. I find Miara's argument to be insufficient to support a finding that a consensual agreement existed between the parties regarding the allocation of risk pertinent to the storage of Viasys' property. *See President, Dir. & Co. of Conway Bank v. Am. Exp. Co.*, 8 Allen 512, 516 (Mass. 1864) ("Something more than silence and acquiescence [regarding due care in keeping the bailed property] would be necessary to absolve a party from the proper measure of responsibility which attaches to the business or calling which he assumes to carry on."); *see also Knowles v. Gilchrist Co.*, 289 N.E.2d 879, 885 (Mass. 1972) (excluding the presumption of negligence in cases "where the bailee has *contractually* obligated himself irrespective of due care.") (emphasis added).